## ELI C. BRISCOE *v.* R. H. McELWEEN.

1. LANDLORD AND TENANT—DISTRESS FOR RENT.—*Semble:* That a landlord cannot unite several distinct claims for different parcels of land under different demises, in a single attachment or distress the rent of; but must resort to distinct proceedings for each.

2. DISTRESS FOR RENT—ABUSE OF THE REMEDY.—A landlord may not lawfully distrain the goods of his tenant for rent not due, upon his mere belief that the tenant will remove his property from the demised premises before the rent shall become due ; but he must have the evidence of reasons and facts upon which to base his belief. Without such evidence the distress is wrongful, and the landlord will be liable for such damages as may result to the tenant therefrom.

3. SAME.—The remedy by distraint does not lie where there has been no fixed price for the rent, or where the use of land was to be paid for in services and no definite value agreed upon for such services. The rent may be payable in grain or other produce, or in repairs or labor, but the sum must be stipulated with certainty in the contract ; otherwise, no distress can be made.

4. SAME—DAMAGES—VERDICT.—The verdict of a jury for damages in cases of tort, will not be set aside as excessive, unless upon clear and gross error, prejudice or mistake of law, on the part of the jury. The court will not substitute its own sense of what would be a proper verdict.

5. SAME—MEASURE OF DAMAGES.—In actions for a wrongful distress, when there is no proof of fraud, malice, oppression, or wilful wrong, either in the taking or detention, the measure of damages is the value of property at the time of taking and interest until the time of the trial. But if such proof exist the measure of damages is left to the jury.

Error to the circuit court of Claiborne county. SMILEY, J. The facts are fully stated in the opinion of the court

*J. H. & J. F. Maury*, for plaintiff in error.

The admission of the plaintiff in his declaration in the court below that, at the time of distress, he did owe a part

of the money, which had been distrained for, destroys his claim for double damages. Rev. Code, p. 341, art 10; N. Y. Dig., p. 712, case 12; Taylor's Landlord and Tenant (5th ed), p. 155, § 732.

Rent service was the only kind of rent known at common law, and the right of distress was incident thereto. Taylor's Landlord and Tenant, 420, § 559. Rent is a certain profit, etc. It must be capable of being rendered certain by either party. 2 Black. Com., 41. It need not be money, but may be property, produce, or services. Ib. Bacon, Abr., title, " Distress; " 3 Thomas' Coke, 253; Taylor's Landlord and Tenant (5th ed.), 269–279, § 369, 370, and p. 104, § 152. For rent service, the landlord may distress by common right. 2 Black. Com., 42; Bacon, Abr., " Distress " *a*; 3 Thomas' Coke, 253; Coke's Littleton, 96 *a*; 1 Salk., 262; N. Y. Dig., p. 714, case *a*, 14, citing 2 Cowen, 652; ib., citing 10 Johns. R. 91.

If the landlord has good reason to apprehend his tenant will dispose of his property to defeat his claim for rent, he may distrain before the rent is due. Rev. Code, p. 340, art. 3.

*Wm. Sillers and Stephen Thrasher*, for defendant in error.

There must be a lease and sum certain agreed upon for rent, or if the rent is payable in service, they must be such as that their value can be ascertained to a complete certainty. See Tift v. Virden, 10 Johns., 11, and 156; Smith v. Colson, 10 Johnson, p. 91; Jacks v. Smith, 1st Bay., p. 315; Smith v. the Sheriff of Charleston, ib., 443; Valentine v. Jackson, 9 Wendell, 305.

The distress warrant in this case was sued out under article 3, p. 340 of the Code, which allows a landlord to distrain for rent before it falls due, on his making oath that he has just cause to suspect, and verily believes that his tenant will remove his effects from the demised premises before the rent will fall due so that no distress can be made. Now, even if the court had considered the services in which the rent was to be paid, capable of being reduced to a sufficient certainty, could their value be proved under this statute? Briscoe

makes an affidavit that the specific sum $309 43, will be due him for rent, from McElween on the 1st day of January, 1869. The question is, after swearing that this amount of rent will be due on the 1st of January, 1869, in money, is he not estopped from proving that the rent was due in services? and is he not estopped from proving their value, and ought he not to be precluded, altogether, from justifying himself in this action of trespass, on the ground that the rent was to be paid in services? It strikes us that even if the value of the services were sufficiently certain under this statute, he should have made an affidavit that so much rent was due in services, specifying them, and that his tenant was about to remove his property from the demised premises, without performing these services, and no distress could be made to compel the performance of the services, or the payment of their value.

Again, this statute contemplates that the distress under it can only be made on a money demand. It is a statute in derogation of the common law on the subject of rent, and is certainly a penal statute, as the tenant dare not dispute the landlord's right to distrain except at the peril of paying double rent. For these reasons it must be strictly construed. At common law, even in the days of the feudal landlords, no distress could be made for rent until the last day in the evening, the tenant having until dark of that day to pay his rent, as he was entitled to sufficient daylight in which to count the money. The books constantly use the words "rent in arrear." See Taylor on Landlord and Tenant, sec. 573, pp. 429, 430, 5th edition; 1 Harding Ky. Reports, p. 297; 1 Saunders Reports; 3 Kent, p. 537; Woodfall on Landlord and Tenant, p. 314. Now, then, this statute allowing the rent in certain contingencies to be collected before it becomes due, by the extraordinary and oppressive remedy of distress, being in derogation of common law, should it not be confined to its terms, that is a money demand? And was not the court below justifiable in refusing to admit proof of the value of the services? Taking all these matters into con-

sideration, we think the court below was correct in excluding the testimony.

There is no testimony to show that Briscoe had any good cause to suspect or believe that McElween was going to remove his property from the demised premises. This court will seldom interfere with a verdict of a jury on a question of the weight of evidence. See Leflore v. Justin, 1 S. & M., 381; Ellzey v. Stone, 5 S. & M., 21; Watson v. Dickens, 12 S. &. M. 608; Mann v. Manning, ib., 615; Wall v. Kirkman, 13 S. & M., p. 599; McMullin v. Mayo, 8 S. & M., 298; see Pitchard v. Myers, 11 S. & M., 169.

The remedy by distress for rent is peculiar, and there should have been a separate distress on each separate and distinct demise, and Briscoe was a trespasser when he distrained on three different demises in one general distress warrant. See Taylor on Landlord and Tenant, sec. 574, p. 430, 5th edition; Rogers v. Berkshire, Strange, 1040. Taylor uses this language: " When there are separate and distinct demises, there must be separate distresses on the several premises subject to each distinct rent, although the several premises are demised to the same tenant. If counsel should insist that the execution of the deed of trust by McElween to Thrasher, for the benefit of Baldwin, was such a removal of the property within the meaning of the statute, article 3, page 340, Code of 1857, as to justify Briscoe in taking out the distress before the rent fell due, then we would refer your honors to the case of Mayre v. Dyche et al., 41 Miss. R., 420, where it is decided that the property of third persons found on demised premises is not liable to distraint, and that a *bona fide* sale of the property by the tenant, absolutely or by way of mortgage or by deed of trust, will defeat the landlord's right to distrain.

TARBELL, J.:

This is an action of trespass brought by R. H. McElween, in the circuit court of Claiborne county, in 1868, against Eli C. Briscoe, to recover damages for an alleged unlawful seizure

by distress and sale of personal property of plaintiff for rent, under art. 3, sec. 1, Chap. XLI, Rev. Code, p. 340.

The declaration contains four counts, complaining in substance: 1st. That no rent was due. 2d. That Briscoe did not have sufficient cause to suspect or believe that McElween would remove his property from the demised premises before the rent would fall due, so that no distress could be made. 3d. That excessive distress was made. 4th. That the sale was made on an illegal sale day. 5th. The property distrained and sold is particularly mentioned, and damages are laid at $4,000.

The defendant pleaded the general issue. A trial at the June term, 1869 of the circuit court, resulted in a verdict for plaintiff of $1,300. Upon the trial, the plaintiff read in evidence, the attachment for rent, and the sheriff's return of the levy and sale, from which it appears that the attachment was issued on the oath of Briscoe, that McElween was "justly indebted to him in the sum of three hundred and nine dollars and forty-three cents," and "that said amount was for rent of certain lands and certain tenements," viz: "the property of him, the said Briscoe, leased by him to said McElween, the rent whereof will be due on the 1st day of January, 1869, and that he, the said Briscoe, has just cause to suspect, and does verily believe that said McElween, his tenant as aforesaid, will remove his effects from said leased premises before the rents thereof will fall due, so that no distress for said rent can be made," and that the sheriff levied the attachment upon "one and three-fourth acres cotton in the cow-pen field; one and one-fourth acres cotton in the orchard field; 6 acres cotton in the gin field; 15 acres corn not gathered; 2 patches sweet potatoes; 1 patch pindars; 1 bed and bedding; 1 foot tub; 1 wash bowl and pitcher; 1 looking-glass; 10 bushels peas in hull; 1 lot seed cotton, about 1 bale; one-half of 3 stacks of fodder," which property after being duly advertised, was sold at public auction to Briscoe, on the 26th day of September, 1868, in the aggregate for $149 25.

The plaintiff, McElween, was sworn as a witness in the

case, and testified, that in January, 1868, Briscoe let him have the orchard field, containing 20 or 25 acres, for the year 1868, for which he agreed to build a fence around the field and trim the orchard trees, but no time named in which to build the fence; Briscoe was to haul the posts for the fence, which he neglected to do, though frequently requested by plaintiff; afterward he leased the cow-lot, containing about two acres, for which he agreed to pay $10, on the 1st of January 1869, and build a fence around it; that he did build the fence around this lot; afterward he leased the gin-field containing about 9 acres, for which he agreed to fill the washes in the gin-field; he planted the orchard in corn, peas, pindars, potatoes and pumpkins, except about one and three-fourth acres planted in cotton; planted the cow-lot in cotton, also, the nine acres in the gin-field; at the time of the levy, he was excluded by the sheriff from the control and possession of the crop; he estimated the property levied on as being worth $1,326 50; valued each item of the levy separately; he employed John Washington as a laborer, and was to give him one-fourth of the corn, cotton and fodder, and one-half the potatoes and pindars; he had no intention to remove the property from the place, and had not removed any; he had gathered ten bushels of speckled peas, worth ten dollars per bushel, and about one bale of cotton in the seed, all of which was on the demised premises; he and Briscoe had fallen out, and he intended to have his crop of cotton ginned at Baldwin's gin, and that there was a gin on that place; he repeatedly asked Briscoe to haul the posts for the orchard fence, to enable him to make it, but Briscoe failed to do the hauling.

It was agreed that the sheriff would testify that the property brought, on sale by him, all it was worth. The defendant, Briscoe, testified that in January, 1868, he leased to McElween, the orchard, on the terms that he would put a good fence around it with black locust posts in front, with caps, etc., the fence to be good and locked and substantial, and he was also to trim the trees. Subsequently leased to him the

gin-field of five or six acres, worth four dollars per acre. Two months afterward leased him the cow-pen of two acres, for which he was to pay ten dollars January 1, 1869, and the plaintiff was also to repair a house for him to live in. On the 10th of September, 1868, plaintiff had not repaired the house, and had not built the fences, nor filled the washes as he had agreed.

Apprehending that plaintiff would remove his property, so as to defeat defendant's claim for rent, he sued out on September 10, 1868, the attachment. The property was not worth at the time of the sale $309 43, the amount for which the attachment was sued out. There were a number of persons present at the sale and several bidders. Witness gathered the crop and ginned the cotton; there were three bales of cotton, weighing less than 400 lbs., and one weighing more than 400 lbs. He bought one-fourth of the cotton from John Washington at 21½ cents per pound, gathered his half of the pindars, and sold them in New Orleans for $20 28. The corn when gathered, did not amount to more than 150 bushels of inferior corn in the shuck, less than a bushel of corn in the barrel, of which one-fourth belonging to Washington, was not sold.

Witness being requested to state value of repairing the house, building fence, and filling washes, the plaintiff objected to the evidence of these values, and the objection was sustained by the court, to which ruling defendant excepted.

Dr. J. L. Torrey testified that he estimated the interest of McElween in the crop when sold at less than $300. This witness was also requested to state the value of the fence to be built, and other improvements to be made by McElween, but plaintiff objected; the objection was sustained and defendant excepted.

John Washington testified that he worked for McElween for a share of the crop; there were only six baskets of potatoes made, and they were small; at the time of the levy of the attachment, stock had been in the field once or twice, but had not injured it, but after the levy, and after Briscoe's pur-

chase, mules, horses, cows, and hogs were in, indiscriminately, and damaged it very much.

The defendant then read in evidence a deed of trust, executed by plaintiff to Stephen Thrasher to secure a debt due to L. N. Baldwin; deed, dated August 21, 1868, to secure note made by McElween, for $143 45, given to Baldwin January, 23, 1866, and an open account, for $78 93, total $222 38, to be paid in twenty days after date of the deed of trust, conveying the crop on Briscoe's place, the same in controversy, together with two horses, and one shot gun, with accoutrements, which deed contained the usual power of sale, etc.

L. N. Baldwin, called by plaintiff, testified that the debt was *bona fide* due him by McElween, and that $68 was due for supplies and advances to enable him to make the crops in question; when the property was distrained, he concluded, as it was a dispute between neighbors, he would not interfere by enforcing his deed of trust.

At the request of defendant, the court gave the following instruction to the jury:

If the jury believe from the evidence, that the property named in the declaration belonged to another person than the plaintiff, at the time when it was levied on by the sheriff, under the attachment for rent, and that the plaintiff had no legal right or interest therein at that time or since, they should find in favor of the defendant.

The following instructions were given at the request of plaintiff:

1st. If the jury believe from the evidence, that the defendant, Briscoe, sued out the attachment for a much greater sum than he was entitled to claim, and made a great and unreasonable distress upon the property of plaintiff, then they will find full damages for plaintiff, for the excessive levy of said attachment, if the case is otherwise made out.

2d. If the jury believe from the evidence, that the defendant, Briscoe, at the time he sued out and levied his attachment for rent against McElween had not just cause to suspect and believe that McElween would remove his effects from the

leased premises before the expiration of his term, or before his rent would fall due, so that no distress for said rent could be made, and that Briscoe wrongfully sued out said attachment, for rent, then if the case is in other respects made out, they will find for plaintiff all such damages as he sustained by such wrongful suing out.

3. If McElween conveyed the property sold under the attachment by deed of trust to Thrasher, trustee, to secure Baldwin, still before a sale under the deed of trust by Thrasher, McElween was to be deemed the owner of the legal title to the property in the deed of trust as to every one except Thrasher, the trustee.

Defendant excepted to these instructions. The jury found a verdict for plaintiff for $1,300, and the defendant moved the court for a new trial, on the following grounds, to -wit:

1st. Because the court on the trial, excluded testimony offered by the defendant, which should have been admitted. 2d. Because the court granted instructions to the jury in behalf of plaintiff which ought to have been denied. 3d. Because the verdict of the jury was unwarranted by the evidence in the case and in violation of the instructions of the court.

4th. The verdict of the jury was excessive.

The motion for a new trial being overruled, the defendant excepted.

The plaintiff in error now asks this court to review the proceedings of the court below, and submits the following assignment of errors:

1st. The court erred in excluding evidence offered to prove the value of the services which were to be rendered for rent. 2. The court also erred in overruling the motion for a new trial.

The important question in this case is upon the exclusion of the evidence offered to prove the value of the services which were to be rendered for rent. The demise was by parol. In fact, there were several demises at different dates, each for a separate tract or parcel of land, and each for definite, separate and distinct services, independent of each

other.   Except ten dollars in money for one tract, part consideration, there was no definite sum fixed for the rent, nor was there any value agreed upon for the service.   Whether the landlord can unite in one proceeding, for the collection of rent, several claims for rent due upon several distinct parcels of land, held by different demises, seems to be settled adversely to the right, but we refrain from the expression of an opinion upon this point, as it has not been fully and particularly presented by counsel.   *Vide*, however, Taylor's Landlord and Tenant, sec. 574, and cases cited; 1 Cowen's Tr., 425.   The facts in the case under consideration appeal strongly in behalf of the application of such a rule.   In his affidavit to obtain the warrant, Briscoe swears that he had reason to suspect, and verily believed that McElween was about to remove his property from the leased premises, but nothing whatever appears in the testimony, upon the trial, to justify this suspicion.   Briscoe himself gives no reason for this belief, nor fact upon which to base it.   He does not even say that he knew of the deed of trust at the time of applying for the attachment, or that he was moved thereto because of it.

The colored woman, Joicy, an inmate of McElween's house, called expressly to prove his intentions in this respect, testified emphatically. that she knew nothing of any such design or threat to that effect on his part.

The remedy by distress is an extraordinary and summary process for the collection of a debt due for rent, not more sacred than many other causes of indebtedness, yet favored by a remedy the most extraordinary, as the case under consideration illustrates.   In its origin, distress was the taking of the personl chattels of another into possession, as a pledge for the performance of a duty, and this was for the purpose of compelling the tenant to perform those services which were the consideration of his enjoyment of the land; but in modern times, the policy of the law respecting distresses has been changed, and a distress for rent is now no more than a summary method of seizing and selling the tenant's property to

satisfy the rent which he owes.   Taylor's L. and T., sec. 557. Within the original definition and limits of a distress for rent, the proceedings of Briscoe in seizing and holding the property of McElween as security, if authorized by statute, might be tolerated, if not justified, but when to seizure is added a sale, followed by the dispossession of the tenant and the destruction by stock running unrestrainedly through the crops, this remedy becomes an instrument of legal oppression, persecution, and ruin, which cannot be sanctioned.

Although ten dollars, part of the rent of one of the demised tracts of land, is the only definite amount agreed upon, the balance of rent for the severally demised premises being payable in repairs for which no price or value was fixed, yet Briscoe, estimating both the rent and the value of the services, in his affidavit for the attachment, swears that McElween owed him $309 43, rent due January 1, 1869, upon which a warrant was issued, and the property of the tenant seized September 10, and sold September 26, 1868.

It has already been stated, that upon the trial, Briscoe offered to prove the value of the services in which the rent was payable, but upon objection thereto by plaintiff, the evidence was excluded by the court.   Counsel submit that after swearing to the amount of rent due in money, on January 1, 1869, Briscoe is estopped from proving the rent to be payable in services.

Waiving a discussion of technical questions, we base our decision upon the ground that a distress was unauthorized in this case, for the reason that there was no fixed price for the rent, or agreed value of the services in which the rent was to be paid.   Such, we understand, to be the doctrine of adjudged cases.   Most certainly it is the rule of justice, and necessary to the protection of the rights of citizens. Taylor's L. and T., sec. 561, and cases.

McElween testified that he and Briscoe had fallen out.   Mr. Baldwin, for whose benefit McElween had executed the deed of trust, testified that he would not interfere, for his own protection, because he regarded it as a quarrel between neighbors.

Evidently, Briscoe entered upon these proceedings in anger. With cotton upwards of twenty-one cents, there was ample property to pay Baldwin and himself, besides a surplus for McElween. In this instance, Briscoe became, eminently, his own judge; fixing the price of his rent, and estimating the value of the services in which it was payable; without a jury, he determines the amount due him, and the court is merely his amenuensis in recovering a judgment, upon which he stript his tenant, even of his bed, his wash-bowl and pitcher, and his mirror!

A statute, permitting such abuses, should be strictly construed; but this is unnecessary, as the authorities are abundant and clear. Kent says: "The remedy provided by law for the recovery of rent, depends upon the nature of the contract. The suit may be covenant, debt, or *assumpsit*, or it may be by re-entry or distress." Baron Gilbert says: "That in that particular, distress is in the nature of an execution, and it would lead to great abuse and oppression if the party could determine for himself the amount due to him." In the case of Lansing v. Rathbone, 6 Johns., Rep., 43, the court say that the remedy is for a certain rent, and not for damages; that the landlord cannot even calculate interest and add it to the rent, because interest is in the nature of damages; he must distrain only for the naked rent. In the case of Jacks v. Smith, 1 Bay., 315, it was said, that "there must be an express contract for rent, either written or parol, and the amount of rent must be certain." In the case of Smith v. the Sheriff of Charleston, 1 Bay., 443, it was declared that "no distress for rent can be made unless a specific sum be reserved by contract."

In the case of Smith v. Colson, 10 Johns. Rep., 91, it was decided "that the rent might be payable in repairs, if the contract settled and fixed the sum certain that should be so paid."

The court, in 3 Blackf., 264, say: "No distress for rent can be legally made, unless the amount of rent is reserved or stipulated by contract, and the sum is certain and specific.

Other actions may lie, such as *assumpsit*, debt, or covenant, but the landlord cannot distrain. The rent for which a distress may be made, may be payable in grain or other produce, or in repairs, or labor, but the sum must be certain, and be stipulated by the contract." The court, in this case, also hold that the landlord should never distrain, " unless he is certain of five things: 1. That the contract between himself and his tenant authorized a distress for the rent. 2. That he has good and lawful cause to distrain. 3. That he has good and lawful right and authority to make the distress. 4. That the thing taken is distrainable. 5. That the distress is made at the proper time and place. For, if he fail in any of those points, he becomes a trespasser."

We are of the opinion that the distress was unauthorized in this case, because no fixed sum for the rent, nor the value of the services in which it was payable, were agreed upon. The court, therefore, was right in excluding evidence of the value of those services and repairs.

The damages, it is insisted, are excessive, and this allegation constitutes the second assignment of error. McElween testified that the orchard field contained twenty or twenty-five acres, of which he planted one and three-fourths acres in cotton, and the balance in corn, peas, pindars, potatoes, and pumpkins; the cow lot contained two acres, which he planted in cotton; the gin-field contained nine acres, which he planted in cotton; he had gathered ten bushels of speckled peas, which were worth ten dollars per bushel, and one bale of cotton, which were on the demised premises; and that at the time of the levy, he made an inventory of the property and estimated it, item by item, at $1,329 50.

The sheriff's return states the following property: about nine acres of cotton in the field, 15 acres of cotton not gathered, two patches potatoes, one patch pindars, one bed and bedding, one foot-tub, one wash-bowl and pitcher, one looking glass, ten bushels of peas in the hull, one lot of seed cotton —about one bale, and half of three small stacks fodder.

Several witnesses testified as to the value of the property

subsequent to the levy, and after stock had been suffered to range through the crops. Briscoe testified that at the time of the sale the property was not worth $309 43; that there were four bales of cotton; sold half the pindars for $20 28; there were 150 barrels of corn, of an inferior quality; cotton was worth upwards of 21½ cents per pound. Dr. Torrey valued the property at the time of the sale at less than $300. John Washington, a man in the employ of McElween, testified that after the levy, mules, horses, hogs, and cows were in the crops indiscriminately, and damaged them very much. It also appeared that immediately upon the levy, the property was taken from the control of McElween.

The instructions appear to be unexceptionable and to have presented the whole case fairly to the jury. As to the third instruction for the plaintiff, particularly objected to by defendant, it announces the law correctly. The doctrine upon which it is based is very fully discussed and clearly stated in Carpenter v. Bowen, MSS. Opinion, by Peyton, J.

The question now is, as to the amount of damages awarded by the jury. A verdict will not be set aside in cases of tort, for excessive damages, unless it clearly appear that the jury committed some gross and palpable error, or acted under some improper bias, inference or prejudice, or have totally mistaken the rules of law, by which the damages are to be regulated. 2 Story 661; 2 Tayl., 31; 1 Humph., 90; 19 Ohio, 365; 4 How., 338; 10 Yerg., 452; 3 Scam., 483; 14 Ohio, 418; 2 Penn., 814; 3 Dana, 464; N. O. J. & G. N. R. R. Co. vs. Statham, 42 Miss. 608.

The court will not substitute its own sense of what would be the proper verdict. 4 Shep., 187. They must be clearly excessive, and greatly disproportionate to the injury proved. 3 Pick., 329. This court will seldom interfere with a verdict of a jury on a question of the weight of evidence. 1 S. & M., *381*; 5 ib., 21; 12 ib., 608; ib., 615. In Bickell v. Colton, 41 Miss., 369, the court stated the following rules as to measure of damages: 1. That in actions for taking and detaining personal property where no question of fraud, malice, oppression, or willful wrong, either in the taking or detention, inter-

venes, the measure of damages is the value of the property at the time of the taking, or conversion, or illegal detention, with the interest thereon to the time of the trial.    2d. That where the trespass, detention, or conversion is attended by circumstances of malice, fraud, oppression, or willful wrong, the law abandons the rule of compensation, in a legal sense, and the measure of damages becomes a matter for the consideration of the jury, guided by the evidence before them.

The estimate by McElween, was made at the time of the levy, Sept. 10, 1868, before its injury by stock, at $1,326 50.    The valuation of the other witnesses was at the time of the sale, after the stock had damaged the crops.    The verdict of the jury was in June, 1869, nearly a year after the seizure for $1,300.

We are not prepared, on a question of this character to erect a standard of judgment superior to a jury of citizens, who must be much better informed of the true merits of the case than the court can possibly be.

The judgment is therefore affirmed.