## GEO. W. BROOKS *v.* W. A. CUNNINGHAM.

1. LANDLORD AND TENANT—DISTRESS FOR RENT.—B. leased lands to C., by written contract, for one bale of cotton weighing five hundred. pounds, for every twenty acres of land cultivated by C.    Upon failure to pay, B. sued for the value of seven bales of cotton, for the rent of one hundred and fifty acres.    *Held:* That it was error to exclude evidence of the value of the cotton to find the amount due to the plaintiff in attachment.

2. SAME—SAME.—Distress for rent will obtain where produce is agreed to be paid, though the value is not fixed and certain, if the amount is so stipulated as to make it capable of ascertainment by calculation, and it is error to instruct the jury that distress for rent only obtains, where the sum agreed to be paid is stipulated, fixed and certain.    Cotton has a certain commercial value, from day to day, and its price, with other products, stocks and coin, are quoted by telegraph throughout the country, daily ; the value of the rent, therefore, was capable of exact and positive calculation.

Error to the circuit court of Rankin county.    Hon. URIAH MILLSAPS, Judge.

This was an action of replevin, brought in December, 1870, by Cunningham against Brooks, to recover three bales of cotton, of the value of $225, and ten thousand pounds of seed cotton, of the value of $500, which the declaration alleges that Brooks wrongfully took and detained from Cunningham. The defendant pleaded not guilty, and on the trial, the verdict was for the plaintiff, finding the three bales of cotton to be of the value of $225, and the ten thousand pounds of seed cotton to be worth $550, and judgment was rendered thereupon, that the plaintiff, who had replevied said cotton from the defendant, should retain possession thereof.

The defendant moved for a new trial, on sundry grounds, which being overruled, he filed his bill of exceptions, setting forth the evidence and rulings of the court as follows : On the trial the plaintiff offered in evidence, the affidavit of defendant for an attachment for rent, which stated that Cunningham was indebted to Brooks seven bales of cotton, weighing five hundred pounds each, for rent due and in arrears, for one hundred and fifty acres of land rented of Brooks, at

the rate of one bale of cotton for every twenty acres of land. That said cotton is worth $525, which said sum, said Cunningham was due said Brooks for rent; also the bond for the attachment, and writ issued thereon for attachment.

Plaintiff also read in evidence a contract in writing, made between him and Brooks, which bears date January 6th, 1870, which states, in substance, that Brooks rents him a plantation for the year 1870, for which he was to pay Brooks one bale of cotton weighing five hundred pounds, for every twenty acres of land, from early picking, put up in good order, etc. And this was all the evidence on the part of plaintiff.

The defendant then introduced McLaurin, who testified that he knew the land rented by plaintiff, and that there was about one hundred acres. Cocke testified that there was about one hundred and forty-five acres, and that the cotton, according to the contract, could have been delivered by the 1st of October. Reber, county surveyor, testified that he surveyed the land pointed out by defendants, and that there were of all kinds of land, tillable and untillable, one hundred and forty-one and three-quarter acres, several acres being grown up in saplings.

Defendant then offered to prove, by two witnesses, the market value of the cotton at the time it was to be delivered, under the contract, which was objected to by plaintiff, and the objection was sustained by the court, to which the defendant excepted. The court then gave instructions for the plaintiff, to which the defendant excepted.

The following errors are assigned, to-wit:

1. That there is error in the said second instruction, granted by the court at the instance of the defendant in error.

2. That the court erred in excluding on the trial, the testimony of the witnesses, W. H. Richardson and S. C. Myers, as set forth in the record offered by said plaintiff in error.

3. That the court erred in refusing the motion of plaintiff in error, to set aside the verdict, and to grant a new trial for the reason set forth in plaintiff's motion, and especially because said verdict is contrary to the evidence.

*A. H. Handy*, for plaintiff in error:

Conceding, for the sake of argument, that the property sued for, had been taken and was held by the defendant under a distress for rent, and, as such, was replevied in this suit, the question is whether, under a contract by a tenant of *a certain described and bounded parcel of land*, to pay the landlord for the rent thereof for one year (1870), *one bale of cotton, weighing five hundred pounds for every twenty acres of land as described and bounded in the contract, the number of acres to be determined thereafter, said cotton to be put up from the early picking, and delivered to the landlord in good order, as early as practicable.* The landlord is entitled to the remedy of distress for rent on this contract unperformed by the tenant.

The rulings of the court below hold, that distress could not be taken on this contract, because there was no fixed and stipulated value stated in the contract, as the price to be allowed for the cotton. This view is wholly untenable under the contract in this case. It is true that rent reserved must be certain in its amount or value; but it will be valid, if, from the nature of the case, it be capable of being reduced to certainty by calculation; or, if it be *payable in a specific chattel*, the nature and character of which is so stated in the agreement, as to be capable of ready ascertainment. Thus, a contract to pay a fixed sum for every acre of a tract of land which the tenant shall cultivate—the number of acres cultivated to be afterwards ascertained—is a valid reservation of rent. 51 Eng. Com. Law Rept. 145; Taylor Land. and Ten. § 561; and cases cited in note, 4 Broom's Leg. Max. 556, 15 American Ed. So a reservation of rent, to be paid in a *specific chattel* of a *stated character*, and whose value can be readily ascertained from the nature and character of the article, which is stated in the contract, is valid, upon the same principle.

It is capable of being rendered certain, according to the rules fixed for its character and value, in the contract by ex-

amination and proof, upon the same principle applicable to the case of so many acres of land as the tenant shall cultivate of certain premises, to ascertain which requires proof of cultivation and measurement as to quantity.

It has always been held as unquestionable law, that rent may be reserved by the delivery of *specific chattels* whose value can be ascertained by *proof* and *examination*, such as horses, wheat and the like. Co. Litt, 47; 2 Blacks. Comm. 41. It "must be certain," says Blackstone, "or that which may be reduced to certainty by either party." Taylor's L. and T. § 561; Smith v. Tyler, 2 Hill, (N. H.) 648.

Here the contract was to pay one *bale of cotton of five hundred pounds* weight *for every twenty acres* of the land leased, to be put up out of *the early pickings*, and delivered to the landlord as early as practicable. The number of pounds and the quality of the cotton to be paid for rent was thus fully specified. It was analogous to an agreement to deliver a horse or mule of a specified age and quality for every twenty acres of the land, which, according to the well settled rules above mentioned, were plainly capable of being reduced to a certainty by either party.

A proper test of this question is thus presented: Suppose the tenant had tendered a bale of cotton of five hundred pounds weight for every twenty acres of land described, and made up from his first pickings, and in due time, as specified in the contract; would not that have been a full discharge of his obligation? Certainly it would; because that was his *defined obligation*. On the other hand, if he failed to do so, is he not bound for the value of the cotton as specified in his contract and liable to be proceeded against for the value of the cotton, to be ascertained according to the rule specified in his contract? Surely he is; because that is the necessary result of the description and character of the *specific article* he had agreed to deliver; the value of which could readily be fixed by the proof according to the rules deducible from the contract, and from the peculiar nature of the article. It could

be ascertained by the price current. Cotton is an article of *commercial value*, and the main basis of every value in this State, when its quality is fixed, as in this case. The "early picking" *which the evidence shows could have been realized by the 1st of October*, its money value is fixed in all matters of commerce, as it regulates the value of gold or paper money; in fact, it controls all other currency and values.

It is for the reason that cotton is peculiarly an article of commercial value, fixed by laws of trade, that the policy of this State has recognized it as the basis of commercial paper, and has made "cotton receipts" assignable and negotiable like promissory notes for money. Hutch. Code, 638, § 1, and though this particular provision of law has been omitted in terms, in the Rev. Codes of 1857 and 1871, yet the same principle is continued in the latter Code, which authorizes the assignment of bonds, promissory notes, and all other writings for the payment of money, or "for the payment of any other thing." Code 1857, 355, Art. 2, Code 1871, § 2228. Under this principle, a contract to pay so much money in cotton would be considered an obligation to pay in the value of the cotton at the time of payment, and as recognizing cotton as a commercial article, the value of which would be regulated by the settled laws of commerce at the time of payment of the obligation, in fact as capable of ascertainment by the prevailing market value at the time. This principle is clearly recognized in Green v. Sizer, 40, Miss., 545. Its value could be fixed by reference to the "price current."

The case of Briscoe v. McElween, 43 Miss., 566-7, is relied on to sustain this judgment.

It was a case of rent to be paid for *in repairs*, with nothing whatever to indicate the value of the services to be performed, or the measure by which the value could be ascertained, their value was a pure matter of *unliquidated damages*, as upon a *quantum valebat*, creating no fixed debt, in amount, and the agreement furnishing no rule by which the value could be directly fixed.

It was not even within the rule by which rent was predicated of a contract to shear the landlord's sheep, which was held good, because the value could be ascertained, by referring to the usual number of sheep. Co. Litt., 96; and Taylor's L. & Ten., § 561.

The repairs in the case referred to, were wholly indefinite in value. But in this case, the rent was to be paid in a *specific article* of fixed value in the market, and of a quality fixed, so that there was nothing to do in paying the rent, but to ascertain the *fixed market value* at the time of payment, and to calculate how much cotton it would take to pay the rent for every twenty acres leased according to the principles stated in the contract, all of which was a matter of easy computation, and the value to be ascertained by the price current.

No question was raised by the plaintiff as to the number of acres in the boundary of the land as described, and no such objection to the rent was tenable. 2 Hill, (N. Y.) 648; Daniel v. Gracie, 51 Eng. Com. Law Rep., 145–152.

Besides this, it is well settled, that if the landlord fail to prove all the rent claimed by him to be due, yet he will be entitled to recover for that in the replevin, which he proves to be due. 3 Stark. Ev., 1297, (margin); Metcalf's Edit, 2 Greenleaf Ev., § 566, (10 Edit.)

*Mayers & Lowry*, for defendant in error:

Brooks sued out an attachment for *rent* against Cunningham for seven bales of cotton, alleging the cotton to be worth $525. His claim for rent was based upon a written agreement, by which Cunningham agreed to give him one bale of cotton for every twenty acres of land he should cultivate; but no *value* was fixed upon the *land* or the *cotton*, but the rent was to be paid in *cotton*, as above stated, when the quantity of land should be ascertained.

Cunningham, disputing the amount of Brooks' demand, and to prevent the sale of the cotton levied on under the distress warrant, replevied the cotton under the statute and took it into possession. He filed his declaration in the circuit court;

to which Brooks plead; and upon the trial the court excluded the testimony offered by Brooks to prove the *value* of the cotton, and under the instructions of the court, a verdict and judgment were rendered for Cunningham.

The ruling of the court was in accordance with that in the case of Briscoe v. McElween, 43 Miss. Rep., p. 556. and refers to that case as decisive of this, for defendant in error.

TARBELL, J., delivered the opinion of the court:

Brooks being the owner of a plantation in the county of Rankin, leased the same to Cunningham, who agreed to pay rent at the rate of "one bale of cotton, weighing five hundred pounds, for every twenty acres of land" described. It was further agreed, that said "bales of cotton are to be put up from the early pickings, and delivered to Brooks, in good order as early as practicable, and which said bales of cotton are to all intents and purposes to belong to Brooks, and not subject to any lien made or given by Cunningham to any person whatsoever."

Cunningham failing to pay according to contract, Brooks made oath near the close of the year, that Cunningham was "indebted to him seven bales of cotton, weighing five hundred pounds each, for rent due and in arrears for one hundred and fifty acres of land, * * . * being at the rate of one bale of cotton for every twenty acres of land, and that said cotton is worth $525, and that said Cunningham is due him said sum of $525 for the rent so due, as aforesaid."

Upon this affidavit an attachment was issued, upon which three bales of cotton and ten thousand pounds seed cotton were seized, when Cunningham caused the cotton so seized to be restored to him by writ of replevin, and thus the issue between these parties came on to be heard in the circuit court of Rankin county. The result of the trial was determined by the ruling of the court, upon the right of the defendant to prove the value of the cotton. Evidence of this value was excluded, and instructions were given to the jury "that distress for rent only obtains when the sum agreed to

be paid is stipulated, fixed, and certain; and if " the jury believe, from the evidence, that Cunningham agreed to pay in produce, and that there was no value, price, or fixed and certain sum attached to, or placed upon the produce agreed to be paid, then a distress would not lie, and the jury should find for the plaintiff." Thus instructed, the jury returned a verdict for the plantiff in replevin. There were exceptions, and a motion for a new trial was overruled. Thereupon a writ of error was prayed, and the judgment of this court is invoked upon the law of the case. Several errors are assigned, unnecessary to be referred to in detail, as the case involves a single question only.

Briscoe v. McElween, 43 Miss., 556, is relied upon for the ruling on the trial of the case at bar. That case must be construed with reference to the facts on which it was determined, viz.: Briscoe let McElween have an orchard-field, containing twenty or twenty-five acres, for which McElween agreed to build a fence around the field and trim the orchard trees, but no time was named in which to build the fence. Briscoe was to haul the posts for the fence, which he neglected to do. For the cow lot, containing about two acres, Briscoe agreed to pay ten dollars and build a fence around it, which he did; and for the gin field, containing about nine acres, he was to fill the washes in the gin field. The character of the fence was not agreed upon—whether brush, boards, or rails, etc. The trimming of the trees was still more indefinite, as the amount of labor to be bestowed, the mode, manner, and extent of trimming, was utterly incapable of determination. So of the washes. With what to be filled, and the mode and manner of the work, are uncertainty itself. There was no data, no standard, no fact, by which the value of this labor and these repairs could be ascertained. It was in view of the utter absence of any and all means of arriving at the value of the rent, in that case, that the opinion of the court was pronounced. The services in which the rent was payable, were neither certain nor

capable of being reduced to a certainty.    Hence the opinion of this court.

In the case at bar, the contract of lease was in writing, and it was agreed, that the rent should be one bale of cotton, weighing five hundred pounds, to be put up from the early pickings, and delivered to the landlord, in good order, for every twenty acres of land, within a certain enclosure, the whole number of acres cultivated to be thereafter determined.    Cotton has a certain commercial value from day to day, and its price, with other produce, stocks and coin, are quoted by telegraph, throughout the country, daily.    The value of the rent, therefore, was capable of exact and positive calculation.

In Smith v. Colson, 10 Johns., 91, it is said, "A landlord may distrain for services, as well as for money due by way of rent ; and the books specify a variety of services and duties for which the party had this remedy at common law.    The great principle was, that the service be certain, or capable of being reduced to certainty, so that, upon the avowry, the lord might be able to ascertain and recover the damages for non-performance.    If a tenant held of his lord by the service of shearing the sheep of the manor, the lord might distrain for the service."    The same views are more fully expressed in Valentine v. Jackson, 9 Wend., 302, wherein the court say, " It is said the *services* or *rent* for which the landlord or lessor may distrain, must be certain, or such as may be reduced to certainty ; for, otherwise, he cannot, in his avowry, recover damages for the non-performance or non-payment, as the jury cannot determine what damage he has sustained. Co. Litt., 96 ; Bac., 342, Tit. Distress ; 10 Johns., 91 ; 20 Com. Law R., 195 ; Bac., Tit. Rent.    But if a tenant holds of his lord to shear all his sheep feeding in a certain manor, this is sufficiently certain, as it is easy to compute the number, and the expense to which he is subjected in employing others to do the service.    At common law, distresses for rent in arrears could not be sold, but were detained as pledges to enforce

the payment, if in money ; or performance, if in services. Bac., 349. Tit. Distress ; 1 Selw., N. P., 503 ; Bac., Tit. Rent. And these pledges were held until payment or performance, unless the tenant replevied, which shows sufficiently the reason why the rent should be certain, and the nature and degree of certainty requisite ; for, otherwise, the tenant would be unable to tender payment or performance. If the rent is payable in money, he should be enabled to ascertain the sum to be paid ; if in services, the extent to be rendered. This he might do if he held for the service of a certain number of days' work, ploughing, etc., or by any other service certain, or which could be rendered certain, as shearing all the sheep in the lord's manor. This affords a much more satisfactory reason for the certainty required in the rent than the one generally given in the books, to-wit : To enable the landlord, in the avowry, to recover damages before the jury for non-payment or non-performance by the tenant." In Smith v. Tyler, 2 Hill, 648, the very learned court sitting in that case, *Held:* That " rent is deemed certain, within the law authorizing landlords to distrain, if capable of being rendered certain," quoting, "*Id certum est quod certum reddi potest,*" and saying, " This rule is not changed by the revised statutes." These rules are thus stated in Taylor's Landlord and Tenant, § 561 : " There can be no distress unless there be an actual demise, at a certain fixed rent, either in money, produce, or services, payable at a time certain ; or, unless the amount, if not fixed, is capable of being reduced to a certainty by calculation. As when the rent is payable in repairs, to be put upon the demised premises, to a certain specified amount ; or to shear all the sheep depasturing in the landlord's manor, by way of rent, without putting it at a certain value in money, in the lease, although the number of sheep may vary from time to time ; for this is capable of being reduced to a certainty by referring to the usual number of sheep, and then calculating the price or value of shearing them. But this mode of computation is to be taken

with the qualification that it must not be subject to continual deductions, as for the erection of new buildings, or the like."

In Briscoe v. McElween, there was no standard by which even to approximate the value of the rent, or the services, neither being fixed, nor capable of calculation, under the agreement; and this is the key to that case. On the other hand, in the case at bar, the contract is in writing, and the produce to be paid in lieu of rent, is so definitely stated, that the amount in money is capable of accurate and exact calculation. It may be likened to the case where a man borrows the cash which a certain quantity of stock realizes on the day he receives the money, and covenants to replace the same quantity of stock on a defined future day. This is a contract *certain;* because it can be ascertained to a demonstration on the day the money becomes payable, as can the value or price of cotton on any day during the season. These views settle the case at bar, in accordance with the most approved authorites, and established rules adopted to the sitution and needs of our people.

Judgment reversed, and cause remanded.