JOHN STORM et al. vs. JOHN J. GREEN.

1. EVIDENCE: *Production thereof.*

It is a cardinal rule of evidence, that the best evidence which under the circumstances is attainable, must be produced, and that secondary or inferior evidence cannot be introduced unless a sufficient reason is shown for the nonproduction of the better.

2. SAME: *Waiver thereof by parol evidence.*

If parol evidence goes to the jury to establish a fact of which written evidence exists, without objection, it will be taken that the party waives any exception for that reason. Acquiescence in the admission of secondary evidence estops the party from objecting to it, after the testimony has been closed, as inferior in quality.

3. EXEMPLARY DAMAGES: *Rule on the subject.*

Where wilfullness, fraud, malice or oppression, evincing a disregard for the rights of others, characterize the wrongful act complained of, the jury are not limited in their verdict to the mere value of the property and interest, but may rightfully consider the circumstances of aggravation, and increase the damages, so as to enforce a respect for the rights of others, and as a punishment to the wilfull trespasser.

4. LANDLORD AND TENANT: *Lien thereof.*

The act of April, 1873, gives to the landlord a prior lien on the crop of the tenant. This act takes from the tenant the power to incumber his crop so as to impair the right of the landlord. Any mortgage, given by a tenant subsequent to the passage of this act, is subordinate to the lien created by it in favor of the landlord for his rent.

ERROR to the Circuit Court of *Lincoln* County.

Hon. J. M. SMILEY, Judge.

This was an action of trespass by Green against Storm & Co., for the wrongful taking of three bales of cotton valued at $175, the damages claimed is $2,000. The jury rendered a verdict for $1,500. On motion for a new trial, plaintiff entered a remittitur of $1,058, when the court overruled the motion for a new trial, and let the judgment stand at $442.

Green rented certain lands to Peter Harrison for 1873, at a rent of eight bales of cotton, due November 1, 1873. In the latter part of that month, Green called on Harrison for the rents, and received seed cotton enough to make three bales, it being all that Harrison had on the premises. Harrison had in the meantime, and on November 1, 1873, executed to Storm & Co., a note for $1,000, for supplies furnished and to be furnished, secured by deed of trust, conveying, among other things, his entire crops for that year, and had already delivered to them, Harrison says, ten bales of cotton. Storm & Co. say seven bales. As to the amount of Harrison's entire indebtedness to Storm & Co., for supplies, Storm & Co. are silent, and Harrison says about $400. Defendants took possession of the cotton forcibly. On the trial of the cause plaintiff proved, by his own testimony, the terms of the contract of rent. On cross examination he was asked if the contract was in writing, he answered in the affirmative. Defendants moved to exclude the testimony. Plaintiff offered the paper to defendants, if they wished to put it in evidence. The court declined to rule out the testimony, and defendants excepted. Plaintiff then proved the terms of the contract by the oral testimony of two witnesses, Applewhite and Harrison, and their testimony was permitted to go to the jury without objection.

The trial resulted as above stated, and the plaintiff in error prosecuted his writ of error, and assigns for error the following:

1. The court erred in overruling motion for new trial.

2. The court erred in overruling motion to dismiss for want of jurisdiction.

3. The court erred in overruling motion to rule out the evidence of plaintiff in his own behalf in reference to the contract for rent, after it was shown the contract was in writing.

4. The court erred in permitting witness Warren to testify as to the pecuniary condition of John Storm, Sr., one of the defendants.

5. The court erred in refusing the 1st, 2d, 3d and 4th instructions asked for by defendants.

6. The court erred in giving the instructions asked for by plaintiff.

*Sessions & Cassidy*, for plaintiffs in error:

The testimony of Green, the plaintiff, should have been excluded. 1 Greenl. on Ev., 10th ed., pp. 119, 125. As to the damages, see Bell *v.* Morrison, 5 Cushm., 68; 3 Parsons on Cont. (5th ed.), p. 171; Austin *v.* Wilson, 4 Cushm., 273; Worley *v.* Perry, 4 Yaust, 355; Whitney *v.* Hitchcock, 4 Denio, 461; Taylor *v.* Carpenter, 2 Woodb. & M., 1, 22; Rippey *v.* Miller, 11 Ired., 247; Amer *v.* Longstreth, 10 Penn. St., 145; Singleton *v.* Kennedy, 9 B. Mon., 222; 3 Parsons on Cont. (5th ed.), p. 173; Act of 1873, p. 80; Boyd *v.* Barrenger, 23 Miss., 270; Garrett *v.* Beaumont, 24 Miss., 377.

*Chrisman & Thompson*, for defendants in error:

Green has the first lien on the cotton. Act 1872, p. 134; Act 1873, p. 79; Code 1871, § 1624. As to the issue in an action of trespass, see 1 Chitty Pl., 520; Stephen Pl., 159; 10 Wend., 112; 11 Johns., 132; 7 Cow., 35; Coke Lit., 284; Code 1871, § 599. They cannot show property in a stranger, it must be in themselves, and they must plead it. 17 Wend., 91; 27 E. C. L. Rep., 372 and 601; 7 Car. & P., 501; (S. C.), 32.

SIMRALL, J., delivered the opinion of the court.

John J. Green had demised to Peter Harrison for the year 1873, a farm in the county of Lincoln, reserving a rent of eight bales of cotton, to be paid on the 1st of November. In the latter part of that month Green called upon his tenant for the rent, when Harrison delivered to him a lot of seed cotton, which, when ginned and baled, made three bales, which was all the cotton the tenant then had on the premises. Green took the cotton to Brookhaven

for a market, and was negotiating a sale, when John Storm, the defendant, in a rude, angry and forcible manner, with the other defendants, took the cotton into possession and deposited it in their cotton yard.   Storm & Co. claimed to have bought the cotton from Harrison.   In the progress of the trial, the defendant put in evidence a deed of trust, executed by Harrison on the 1st day of November, 1873, to secure to Storm & Co. a note for $1,000, of the same date, due one day after date, including three or four work animals, a wagon and all the agricultural crops, which Harrison might produce that year.   This was the foundation of the right of defendants to the cotton, and the pretext under which the forcible seizure was made.   It was proved that the note and deed of trust were taken to secure such advances as had been or might be made by Storm & Co. to Harrison in that year.   One of the defendants connected with this firm testified that they had received from Harrison, prior to that time, seven bales of cotton, exclusive of these three; but he omitted to say what they were worth, and for how much Harrison was credited.   The witness also omitted to state to what amount Storm & Co. had furnished supplies, and what balance was due them.   Harrison, the tenant, testified that he had delivered to Storm & Co. ten bales of cotton (exclusive of the three in controversy); that he did not think that he had obtained more than $400 worth of goods and supplies in all, nor did he think that he owed them anything; that he had repeatedly tried to get his account from Storm & Co., but they had never given it to him.   It was also in evidence that Storm & Co. commenced to advance to Harrison in June, when he was fully advised of the terms of his lease from Green.   When the deed of trust was executed, Harrison protested that the rent must be first paid to Green.

From this summary of the facts, which constitute the body of the case, we advance to the questions of law raised by the bill of exceptions.

After Green, the plaintiff, had testified as to the terms of the demise on the examination in chief, he was asked, on cross exam-

ination, if the lease was in writing; answering in the affirmative, the defendants, therefore, moved to exclude the testimony. The counsel for the plaintiff then offered the paper to the defendants, if they wished to put it in evidence. The court declined to rule out the testimony, which is the first ground of exception.

One of the cardinal rules of evidence is, that the party must produce the best evidence which, under the circumstances, is attainable. If the contract has been reduced to writing, the paper itself is the best and most reliable proof of its terms; nor will secondary evidence be allowed unless a sufficient reason is shown for the nonproduction of the better. It was in the power of the plaintiff, Green, to have produced the written lease, for he had it when he gave an oral account of its terms, and when the defendant insisted that this original and higher evidence should be put before the jury, it was error not to have required it, and fatal error, unless something else occurred in the subsequent stages of the trial which cured it.

The second witness introduced by the plaintiff was Applewhite, who deposed to the contract of lease as Green had done, without objection by the defendants. The witness was present when the contract was made.

If parol evidence goes to the jury to establish a fact, of which written evidence exists, without objection, it will be taken that the party waives any exception for that reason. Edge v. Keith, 13 S. & M., 295. Acquiescence in the admission of secondary evidence, as a copy or oral evidence of a contract which is in writing, estops the party from objecting to it (after the testimony has been closed) as inferior in quality. It was the duty of the defendants to have arrested the witness Applewhite from speaking of the lease and its terms, because it was in writing. If that had been done the writing would have been produced, or if not, the court would have excluded the testimony. The terms of the lease were also proved by the witness Harrison, without objection. As we have already said, it was error not to have ruled out the oral testimony of Green in reference to the contract of

lease.  But subsequently the same matter was proved by two other witnesses.  If, therefore, Green's testimony were disregarded altogether, the same facts were proved by other witnesses without objection at the time, and without application, subsequently, to rule it out.  We must conclude, therefore, that as to Applewhite and Harrison, the defendants concluded to abandon their original objection, on account of the character of the testimony, and to acquiesce in the proof of the fact by inferior evidence.

There was then before the jury oral testimony of the terms and conditions of the lease.

The defendants were in possession of the lease; it was handed to them pending the examination of Green.  If it would have been of any service to them they could have put it in evidence. Certainly they ought not to have closed the mouths of Applewhite and Harrison, unless they were content to let the contract in that mode of proof go to the jury.

We are of opinion, therefore, that the defendants waived their original objection, and acquiesced in the proof of the contract by secondary evidence.   The point falls within the operation of the rule applied in Atwood v. Meredeth, 37 Miss., 635, and Cogan v. Frisby, 36 id., 178.   Warren, a witness for the plaintiff, was permitted to depose as to the wealth and property of the defendants, or some of them.   This is also assigned for error.   In Bell et al. v. Morrison, 27 Miss., 85, 86, it was held that when a proper case was before the jury, justifying the interposition of exemplary damages, the jury ought to be informed of all the circumstances which would enable them to make a right estimate. Among these, was the situation of the parties as to wealth, character and influence.   The point arose in that case on an exception to the admission of evidence "showing the quantity and value of the property owned by Bell" (the defendant) precisely as the question is presented in this record.   See also, N. O., J. & G. N. R. R. Co. v. Hurst, 36 Miss., 660.

The circumstance that the defendants, or some of them, are persons of wealth, is of no consequence, unless the jury would be

warranted in fixing the damages to exceed the value of the property and interest thereon from the date of the taking. The rule on the subject of exemplary damages has been several times repeated in this court, and has assumed a definite form, where wilfulness, fraud, malice or oppression, evincing a disregard of the rights of others, characterized the wrongful act complained of, then the jury are not limited to the mere value of the property and interest, but may rightfully consider the circumstances of aggravation, and increase the damages so as to enforce a respect for the rights of others, and as a punishment to the wilful trespasser. Whitfield v. Whitfield, 40 Miss., 352; Briscoe v. McElween, 43 id., 569; Jamison v. Moon, 43 id., 602. In the latter case it was said to be proper to consider whether the trespass was committed "with a high hand, wantonly, needlessly, oppressively." The jury may also take into the account "mortified sensibilities and reputation of the party, and the evil example to the public." The prominent facts attending the seizure of the cotton, are, Green, the plaintiff, had brought it from the demised premises to Brookhaven, and was engaged in the act of selling it, when the defendants came up; one of them declaring that they would have the cotton at all hazards, others, in great anger, using profane language, and, notwithstanding the remonstrances of Green, immediately took it into possession and removed it to the cotton yard of Storm & Co. The cotton was forcibly taken from the plaintiff. The act was aggravated by the coöperation of three or four excited men, uttering profane oaths, directed to the plaintiff, a minister of the gospel.

We have no hesitancy, therefore, in holding that the jury might well impose exemplary damages if the plaintiff had established his right to recover.

The case of Arbuckle v. Nelms, 50 Miss., 558, in its circumstances, is like the case under consideration. In that case, as in this, the contest was between the lien created by a deed of trust, and the lien of the landlord for his rent, under the statute of 1873, pamphlet, p. 79. There we held that the statute imparted

a first lien in favor of the landlord, and, in effect, took away from the tenant the power to assign or encumber the crop so as to impair the right of the landlord. That case oppositely applies to and gives the rule for this one. Harrison did not encumber his crop until — day of November, after the entire rent had become due. Storm & Co. were at the time advised by Harrison that his rent must be first paid. The testimony is direct that they were fully advised, and took the security for the very purpose of defeating Green in getting his rent by acquiring a superior right to the cotton.

If Harrison is to be believed, he had paid and overpaid his indebtedness to Storm & Co.; nor did the defendants overcome that testimony by a production of the accounts and credits.

The right of the plaintiff to recover was clear, not at all dependant on doubtful or conflicting evidence. If the result of the trial is clearly right on the law and the evidence, a new trial will not be awarded by this court, although the court may have misdirected the jury. If the verdict is right and justice has been done, it cannot be affirmed that the plaintiff in error has been prejudiced by the instructions. Why remand the cause for another trial when it is manifest that the same result will be attained? Erroneous instructions are not grounds for setting aside a verdict, where it is plainly right on the law and facts. Wiggins v. McGimpsey, 13 S. & M., 532; Head's Case, 44 Miss., 731; Evan's Case, id., 762. On the hearing of the motion for a new trial, the plaintiff entered a remittitur for $1,058. Thereupon, the court overruled the motion, and awarded judgment for $442, the residue of the verdict. We promptly respond to the assignment of error, assigning the verdict as excessive. That, in our opinion the sum for which the judgment was rendered is not exorbitant. In cases for test, the verdict will not be set aside for excessive damages, unless it appears that the jury committed some error, or acted under some improper bias, or had mistaken the rules of law by which the damages should be regulated. Briscoe v. McElween, 43 Miss., 569, and cases there cited. The views which

we have expressed renders it unnecessary to consider the instructions to the jury.

The judgment is affirmed.