DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1881.

---

### PETER M. MELICK v. CYRUS BENEDICT.

1. To entitle a landlord to distrain for non-payment of money, it must be due under a demise, and for a rent fixed and certain, or capable of being reduced to a certainty by either party.
2. One-half the profits of a coal-yard reserved as rent may be distrained for if the amount appear in books of account kept by agreement of the parties.

---

On error to the Circuit Court of Essex county.

On July 1st, 1877, one Grace Smith let and rented to the plaintiff, Peter M. Melick, by lease in writing, under their hands and seals, the land and premises No. 199 Plane street, in the city of Newark, to be used for a coal-yard, for the term of one year, the plaintiff agreeing to pay the said Grace Smith, as rent for the same, the sum of $750, in quarterly instalments, at the expiration of each quarter, "and the further sum of one-half the profits arising from the business and occupation of buying, selling and delivering coal from said premises, which said profits are considered and taken as part of the rental price of said premises," and were to be paid at

425

the expiration of the term of the lease.    It was also agreed
that the said Grace Smith should furnish a suitable and
proper person to take charge of the selling and delivery of
coal from the said premises, and keep accurate books of ac-
count for the said Peter M. Melick, but she was in no manner
to be considered a partner with Melick in the business.    At
the expiration of the term in the lease, a warrant of distress
was issued for $187.50, one quarter's money rent due at that
date, and for $1112.50, claimed to be the amount of one-half
of the profits arising from the business of buying, selling and
delivering coal from the rented premises during the term.
Cyrus Benedict, the defendant, a constable, was made agent
to execute the distress warrant.    The plaintiff replevied the
goods distrained, and the defendant averred the taking, in
right of the landlord, for rent in arrear.

The defendant offered the books of account and an account-
ant, to show what the profits of the business were during the
term, and that the landlord's one-half share amounted to
$1112.50 at the time the distress warrant was issued for that
sum.

These offers were overruled, and the court directed a ver-
dict for the plaintiff for nominal damages; whereupon, the
defendant brings this writ of error.

For the plaintiff, *C. Borcherling.*

For the defendant, *P. W. Cross.*

The opinion of the court was delivered by

SCUDDER, J.    The reason given for overruling the evidence
offered was that the rent reserved of one-half of the profits of
the business was uncertain, requiring an account to be taken
by both parties before it could be ascertained, and therefore a
landlord's warrant of distress could not be issued for it.    To
entitle a person to distrain for non-payment of money, it must
be due under a demise, and for a rent fixed and certain in its
nature.    It is a maxim in law that no distress can be taken

for any services that are not put into certainty nor can be reduced to any certainty, for *id certum est quod certum reddi potest.* But yet in some cases there may be a certainty in uncertainty. Therefore, if a man hold land, paying so much per acre, although in the terms of the demise the number of acres is not fixed, the lord may distrain. So a man may hold of his lord to shear all the sheep pasturing within the lord's manor; and this is certain enough, although the lord hath sometimes a greater number and sometimes a lesser number; and yet this uncertainty being referred to the manor, which is certain, the lord may distrain for this uncertainty. *Co. Lit.* 96, 142.

So, if there be a demise of a grist-mill, the lessee to render one-third of the tolls, the lessor may distrain for rent; "for," the court said, "if the tenant keep an account of the tolls, which it is his duty to do, the rent may be reduced to the utmost certainty." *Foy* v. *Jones,* 2 *Rawle* 11.

Where a marl-pit and brick-mine were rented at so much per solid yard for all the marl that the tenant got, and so much per thousand for all the bricks that he made, this was said to be a rent capable of being ascertained with certainty, and for which, therefore, the lessor might distrain. *Daniel* v. *Gracie,* 6 *Q. B.* 145.

In *Brooks* v. *Cunningham,* 49 *Miss.* 108, there was a demise of land for the rent of one bale of cotton for each twenty acres tilled; and this was held to be a certain rent, for the cotton had a marketable value, and the amount of rent could thereby be made certain. In other cases a rent reserved of so much per square for slate to be quarried, or so much per bushel for each bushel of grain raised by the tenant, is said to authorize a distress; for in each of these cases the rent is capable of being ascertained with certainty. *Wood L. & T.* 461, 729, 931; *Taylor L. & T.* 561; *Arch. L. & T.* 30, 106.

In all of these cases there is certainty as to the portion, but uncertainty as to the quantity of the profit from which the rent is reserved; but as the quantity may be readily shown,

and is demonstrable, it has been held that the rent is thereby rendered certain.

Where a room in a factory was let, with steam-power for working lace machines belonging to the tenant, at a certain sum per annum, payable quarterly, a deduction to be allowed in the event of hindrance in the supply of power beyond seven days in each quarter, it was held a sufficient demise to entitle the landlord to distrain. Willes, J., said : "It was objected that the rent here was uncertain, by reason of the provision for deductions in respect of possible failure in the supply of working power. But it is new to me that a rent is uncertain because it cannot be ascertained at the time of the demise what rent will become payable on a future contingency. Such a rent may clearly be distrained for. The maxim *id certum est quod certum reddi potest* applies. A thing is sufficiently certain when it may be made so by an arithmetical process." *Selby* v. *Greaves*, 3 *L. R.*, 3 *C. P.* 594.

But the rent or profit, in whatever it consists, whether payable in money or the produce of land, or labor, or in repairs, must be stipulated for by the contract, and must be certain, or capable of being reduced to a certainty by either party. *Valentine* v. *Jackson*, 9 *Wend.* 302 ; *Smith* v. *Colson*, 10 *Johns.* 91.

Two reasons for this certainty are given in the books : one, that as at common law goods taken by distress could not be sold, but were retained as pledges for payment of money or performance of services, the tenant must know the amount to be rendered, otherwise he could not tender payment or performance in discharge of the pledges taken for rent. Another cause assigned is to enable the landlord in the avowry to recover damages before the jury for non-payment or non-performance by the tenant.

In the present case the rent reserved is in two forms—part in money, concerning which no question is made that the amount is definitely fixed ; and part in the profits of a business—to wit, one-half the profits arising from the business and occupation of buying, selling and delivering coal from

the rented premises used as a coal-yard. We are not called upon to determine whether, under the terms of this agreement, this share of profits is strictly a rent reserved, or a mere personal contract to pay an additional sum, in consideration of service rendered and expense incurred by the landlord, in addition to the use of the land; for the exceptions taken relate to the admissibility of the evidence offered, to show by the books the amount of one-half of the profits at the end of the term, when they became payable as rent. This testimony was rejected, because the term "profits" used in this lease, in its application to the subject matter from which the rent was reserved, was necessarily uncertain, and could only be determined by the act of both parties in stating an account of the business, and that the amount thus intended to be reserved could not be certainly ascertained by either the landlord or tenant, so that one could distrain for a fixed sum, or the other redeem the goods distrained by tender and payment of a known amount. This can hardly be true where the transaction is so simple as the purchase and sale of a single article, and the usual loss and expense incident thereto, for the short and definite period of one year, and where, by the express stipulation of the parties in the lease, the landlord's employee is to take charge of the selling and delivery of coal from the premises, and keep accurate books of account for the tenant. It may be that this salesman and accountant, who was thus acting for both parties, has so kept or balanced the books that the amount of profits will readily appear upon their production. If this result was contemplated by the parties, and it has been actually effected by the agency proposed and provided by them, and by a simple process of book-keeping and calculation, where the quantities are all known and appear, then the amount payable by the tenant as one-half the profits of the business, might be readily ascertained by either of the parties, and the books so kept by them would be competent evidence for that purpose.

The judgment will be reversed, and a *venire de novo* ordered.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, PARKER, REED, SCUDDER, VAN SYCKEL, CLEMENT, COLE, DODD, GREEN, WHITTAKER.    12.