## B. L. HATCH, JR., v. G. A. SYKES.

TENANTS IN COMMON. *Rent collected by one. Action for by purchaser of other tenant's interest. Case in judgment.*

    H. and W. owned a tract of land as tenants in common. W. mortgaged his interest, but remained in possession after condition broken. H., who had been accustomed to collect the rents for both, in January, 1884, rented the lands for the ensuing year, took rent notes therefor, bought W.'s interest in them, and then sold the notes. On February 21, 1884, the mortgage on W.'s interest was foreclosed, and S. became the purchaser. In December, 1884, S. sued H. for money had and received for the rent of S.'s interest in the land

from February 21, 1884, to the close of the year. *Held*, that S. has no right of action against H., but must look to the occupants of the land for her rent.

APPEAL from the Circuit Court of Monroe County.

HON. J. W. BUCHANAN, Judge.

B. L. Hatch, Jr., R. D. Whitfield, Needham Whitfield, and M. C. McNairy owned a tract of land as· tenants in common. In 1880 R. D. Whitfield executed a mortgage on his undivided interest in the land to secure a note to become due in 1881. The condition of this mortgage was broken in 1881 on the maturity of the note, it not being paid. B. L. Hatch, Jr., was in the habit of looking after this land, securing tenants therefor, and collecting the rents for all the parties. In January, 1884, he took rent notes from the tenants for the rent of all the land for the year 1884 and distributed to each owner his *pro rata* share of such notes, except the fourth interest therein of R. D. Whitfield, which Hatch retained on the claim that he had bought the same from Whitfield on January 15, 1884. Hatch immediately thereafter sold the rent notes which he had reserved as having been bought from Whitfield.

On February 21, 1884, the mortgage given by Whitfield as above stated was foreclosed, and the title therein conveyed was bought by Mrs. G. A. Sykes. Up to the time of the foreclosure there had been no ouster of Whitfield's possession. Mrs. Sykes brought this action against B. L. Hatch on December 29, 1884, for one hundred and thirty-seven dollars and seventy-one cents, for money had and received by him for the rent of her interest in the land from February 21, 1884, to the end of the year. The justice of the peace found for the defendant, and the plaintiff appealed to the circuit court. There the court gave a peremptory instruction to the jury to find for the plaintiff, but the jury found for the defendant, and the court granted the defendant a new trial. On the second trial the jury found for the plaintiff on a peremptory instruction from the court to that effect, and the defendant appealed to this court.

*W. B. Walker,* for the appellant.

This is one of those cases when a plain statement of it is its decision.

Mrs. Sykes sues Hatch for a sum certain received by him for her "for one-quarter of the rent of the Sam Whitfield place." From a careful and sincere scrutiny of the record we fail to see anything tending to fasten a liability on Hatch for the money sued for. The record discloses a mortgagor in possession of the mortgaged premises after forfeiture, renting out the property to tenants, taking their notes for the rent, and selling them for cash while yet in possession and before foreclosure of the mortgage. It further discloses the purchaser at the foreclosure sale long after that, and while the tenants are still on the premises, bringing suit against the purchaser of the rent notes for their face value. To entitle Mrs. Sykes, the foreclosure purchaser of the realty, to a claim against Hatch, the purchaser of the rent notes, there must exist between them either a privity of relationship, or Hatch must have been such a trespasser as to give Mrs. Sykes an action against him " for money had and received" as a penalty for wrong doing.

The facts in the case deny both positions.

If Mrs. Sykes can sue any one other than the tenants it would seem that she must begin with the one to whom the tenants executed the notes and who first realized money on them by putting them in circulation on the market; that is, Whitfield, the mortgagor, and if not him, then the party to whom the tenants paid the notes if they were ever paid. There is no sense in the proposition that she has her choice of all these parties. It is an affront to ordinary legal intelligence.

But she could not even have her action against Whitfield. Being mortgagor of the land, and in possession after forfeiture, he could contract for and receive rent to his own absolute use. Jones on Mortgages 771; *Carpenter* v. *Bowen*, 42 Miss. 49.

Having the right to contract for and receive rent to his own use, if he received the rent in advance from the tenants before foreclosure, the purchaser could not sue him " for money had and received." *Stone* v. *Knight*, 23 Pickering 95; 7 Blackford (Ind.) 176.

Then if Whitfield is not liable most certainly Hatch cannot be liable through that channel.

*Sykes & Bristow,* for the appellee.

The deed of trust debt was due in 1881, and the land was liable to be sold at any time by the trustees, and an assignee of the lands or notes took them subject to such sale at any time. If R. D. Whitfield, the mortgagor, assigned his interest in the rents of 1884, the assignee took just what *he* would have received if he had not assigned. Suppose he had not assigned his interest in the rents and Mrs. Sykes had bought under the mortgage sale, February 21, 1884, and Hatch had, as usual, negotiated the rent notes and distributed the proceeds, to whom would he have distributed them? Undoubtedly to R. D. Whitfield the proportion of rents up to February 21, and to Mrs. Sykes the proportion of rents after February 21. *Wathen* v. *Glass,* 54 Miss. 382.

The authorities cited by counsel below were cases where a vendor had *absolutely* sold and conveyed lands previously validly leased and rent assigned. Of course, *there* the recourse of the vendee was on the vendor's warranty, and not against the tenant for rent.

Here the tenant went in, knowing that he might at any moment be required to attorn to another landlord or be turned out, and the assignee of the mortgagor's interest in the rents took the assignment, knowing that the said interest might cease at any moment.

How can Hatch, in such a case, claim to have purchased the whole year's rent? His fiction of not "*collecting*" the rent but of merely "buying and selling commercial paper in the market" is altogether too attenuated for serious notice. It is proven to be the only way he had gotten the rents for years, and he regularly distributed the proceeds among the tenants in common. He says himself that he, as agent for the owners, took the rent notes, payable to the "*owners of the land,*" and negotiated them on the market and divided the proceeds among the owners. Well, after February 21, 1884, Mrs. *Sykes* was one of the "owners of the land." *Two* of the rent notes were dated *late in March,* consesequently, according to his own statement, he took the notes for the rent of our land, payable to us, negotiated them in the market, and pocketed our part of the proceeds.

"Buying and selling commercial paper in the market" in this case is too tremendous a technicality for this judicial climate.

The five hundred and seventy-six dollars and eighty-five cents was for net rents for 1884, and it was collected by Hatch, as agent, exactly as he had been collecting in previous years, and Mrs. Sykes is entitled to one-fourth of it [less rent from January 1, 1884, to February 1, 1884].

Mrs. Sykes, after her purchase on February 21, had the right to elect either to hold the *tenants* directly liable to her or to recognize B. L. Hatch's agency, just as the other tenants in common did. She chose the latter. It was the only convenient and practicable course, owing to the joint ownership of the land and the joint liability of the tenants. She simply looked to the general agent, who usually collected the rent in his own way, for her share. He had taken notes—*all belonging*, one-fourth, to her, and *half of them payable*, one-fourth, to her—realized on them in the market according to his usual custom and distributed the proceeds among the other tenants in common. It is a simple truism to say that Mrs. Sykes is entitled to her share, as one of the tenants in common of the land and a joint owner and payee of the notes.

CAMPBELL, J., delivered the opinion of the court.

The right of the appellee to rent of the land accrued on February 21, when she became owner. The fact that one who could not assure quiet enjoyment for the term had nevertheless taken notes for the year's rent and disposed of them gave no right to the appellee. Her right was to look to the occupants, and she has no claim on him who collected rent before or after her purchase by virtue of his renting. The doctrine of ratification of an assumed agency does not apply, for the appellant did not assume to act in that capacity. He dealt for himself and others before appellee became owner. If the mortgagor had rented the premises and received prepayment for the year, the only consequence would have been that when his estate was vested in the appellee the title of his tenants expired, and they were, therefore, to hold of the new owner, and the fact that they had purchased and paid for one year's pos-

session would not avail to secure it to them, because their lessor, the mortgagor, had no power to secure to his lessees a term to extend beyond the time when his estate vested in another by virtue of a sale under the mortgage, which was paramount to their claim. The judgment is reversed, and the first verdict for the defendant (appellant) established, and judgment on that and for costs in favor of the appellant, not only here but in both trials in the circuit court.