## B. J. ALLEN, ASSIGNEE, *v.* SMITH BROS. & CO. ET AL.

1. ASSIGNMENT FOR CREDITORS.  *Hereditaments.  Rent notes.  Reservation.*

   Where the owner of lands, having rented the same for the year and taken rent notes, makes an assignment conveying his lands, tenements and "hereditaments," the right to the rents passes to the assignee by the use of the word hereditaments, and, having thus. conveyed them, the assignor cannot retain or thereafter make other valid disposition of the same.

2. ·SAME.  *Rents assigned.  Reservation of notes.  Effect.*

   But in such case, as the assignment carries with it the rents, retention of the rent notes by the assignor, and his subsequent delivery of them to a third person, being wholly ineffectual, cannot. defeat the assignee's right to the rent, and, therefore, such .retention and delivery will not invalidate the assignment.  *Hatch v. Sykes*, 64 Miss., 307; *Bowdre* v. *Sloan*, 69 *Ib.*, 369, cited.

3. SAME.  *Validity of debt.  Administrator.  Decree for distribution.*

   When formal insolvency proceedings are waived, and, by agreement of all parties, a decree is entered directing the administrator of an estate to make distribution among creditors, he becomes personally liable for the amounts decreed to them respectively, and preferring such a creditor in a partial assignment of his property is not unlawful.  *Anderson* v. *Tindall*, 26 Miss., 332.

4. SAME.  *Fraud; proof of.  Chancellor's finding; effect of same.*

   Where conveyances are assailed as fraudulent, and the controversy is largely one of fact, though there is much evidence to excite suspicion as to some of the transactions, if the alleged fraud is. not satisfactorily established, and the court, on the whole case, is. unable to say that the finding of the chancellor is erroneous, the same will not be disturbed.

5. SAME.  *Retention of assigned notes.  Charge of fraud.  Failure of proof.*

   Where it is alleged that certain notes conveyed in an assignment. were withheld by the assignor; that, being placed in an envelope with other notes, they were subsequently delivered by him to a, creditor, and the assignor testifies to such delivery, but it is satisfactorily shown that he is mistaken as to this, and there is no evi-

dence they were retained by him, the assignment will not be held void. Where the proof does not show fraud, the court cannot affirm its existence.

From the chancery court of Noxubee county.

Hon. T. B. Graham, Chancellor.

The record in this case is very voluminous, and a number of questions are discussed by counsel that are not referred to by the court, except in a general way. In view of the opinion, it is only deemed necessary to state the following facts: On February 27, 1892, Jacob Holberg, a merchant of Macon, Miss., executed to B. J. Allen, as assignee, a deed of assignment, preferring certain creditors. The deed conveyed all the "lands, tenements and hereditaments" of the grantor, and the stock of goods in a certain storehouse, also "all book accounts and demands owing to him and pertaining to said mercantile business, together with all securities for the same." It did not purport to convey all the property and effects of the grantor. Shortly after the execution of the assignment, proceedings were instituted in the chancery court by various creditors of the grantor, appellees here, seeking to set aside the assignment and subject the property conveyed to their demands, upon the ground that it was made with intent to hinder, delay and defraud creditors. An answer was filed, denying the material allegations of the bill, and testimony was taken at great length on the question of the validity of the assignment and certain other transfers and conveyances which were executed prior thereto.

The cause was taken under advisement, and a decree was entered avoiding the assignment for fraud. As to the other conveyances, relief was denied. The chancellor filed a written opinion, in which he held the assignment void, for two reasons: 1. Because of the retention by the assignor of certain notes which the assignment purported to convey, and which were subsequently delivered to one Murphey. 2. Because of the preference in the assignment of a debt in favor of Weatherbee & Co., the facts in reference to which are stated in the opinion.

The facts in relation to the reservation of the notes delivered to Murphey are these: The assignment was executed and filed for record on Saturday night. On Saturday morning, before the assignment, Holberg, the assignor, took the notes from his safe, selecting them from among other papers, and indorsed them to Murphey. He then placed them in an envelope and wrote Murphey's name thereon, and put the package in his pocket, intending to see Murphey and hand him the notes during the day, before executing the assignment. But it appears that in the hurry and excitement of the occasion he forgot to do this, and did not discover that he still had the package in his possession until Saturday night, after the assignment was executed. The next morning, Sunday, he sent for Murphey, explained to him what he had done and gave him the package, stating that this was in payment of what he owed him. Murphey, to whom he was indebted, expressed satisfaction and accepted the notes and kept them as his own. On behalf of complainants, it was claimed that, besides certain rent notes, which it is not disputed were so retained and delivered to Murphy, there were certain mercantile notes, or notes taken by Holberg in his business as a merchant, which were placed in the envelope with the rent notes and delivered to Murphey. Referring to these mercantile notes, the testimony of Holberg, the assignor, on this point is as follows: "*Int.* In what way were the notes of Clark, Robert Richardson and Addison Frierson transferred to T. S. Murphey? *Ans.* They were transferred with the notes that T. S. Murphey got. *Int.* Were they transferred by you and delivered on the same day—viz., the day after the assignment—along with the rent notes that he has testified were delivered to him on that day as collateral security for the same debts referred to by him? *Ans.* As I have stated before, those notes were turned over to Murphey the same time when I turned the rent notes over to him, as they were all in the same envelope, and, of course, were turned over on the morning of the next day after I made the assignment. I do

not know that I gave the paper for collateral security, but I gave it to him in payment of the notes I owed him, and he seemed to be satisfied with them." The opinion contains a further statement of the facts in relation to this point.

From a decree in favor of complainants, avoiding the assignment, and subjecting the property embraced therein, the assignee appealed, and from so much of the decree as denied relief in respect to the other conveyances, the Adler-Goldman Commission Company, one of the complainants, prosecuted a cross appeal.

*A. C. Bogle,* for appellant, B. J. Allen, assignee,

Filed a lengthy brief, as to the questions referred to in the opinion of the court making the following points:

1. The preference of the debt in favor of Weatherbee & Co. was not unlawful. It is true that Sanders originally owed this debt, but Holberg was the administrator of his estate, and, when formal insolvency proceedings were waived, and a decree of distribution was made in favor of creditors of that estate, he became personally responsible to each creditor for his distributive share. What was before a debt due in his representative capacity became a personal obligation. *Anderson* v. *Tindall,* 26 Miss., 332; 2 Woerner on Admin., 865. The chancellor did not hold the debt fictitious in fact, but simply decided that it was not due by Holberg individually.

2. Before discussing the merits in relation to the reservation of the notes, it is proper to call attention to the fact that this is not a general assignment. It does not purport to convey all of the debtor's property and effects. It does not profess to convey any notes at all. Whatever the assignor may have said about this, or thought about it, the court can only look to the instrument itself to ascertain whether it is a general or partial assignment. *Taylor* v. *Watkins,* 13 So. Rep., 811. The instrument cannot be varied or enlarged by parol testimony. The chancellor adopted Murphey's statement as correct,

and found that all the notes delivered to him were rent notes, and we rely upon this finding. The term "hereditaments," in the assignment, in its broadest sense, covers every species of property that may be the subject of inheritance. 2 Washburn on Real Prop., 21; 3 Kent's Com., 401; Anderson's Law Dict. Assuming that the notes were for the rent of lands owned by Holberg at the time of the assignment, the right the assignee acquired under the deed was to proceed against the occupants of the lands for use and occupation. *Hatch* v. *Sykes*, 64 Miss., 307; *Bowdre* v. *Sloan*, 69 *Ib.*, 369.

3. Neither the assignor nor creditors were deprived of any right by the alleged reservation of the notes. No benefit was reserved to the assignor and no harm resulted to creditors thereby, and the validity of the assignment was not affected. In the absence of a fraudulent intent, and where there is no harm to creditors, an assignment cannot be successfully assailed.

4. Under the circumstances of this case, the delivery of the notes to Murphey will be considered as having been made contemporaneously with the deed of assignment. The notes were indorsed and set apart before the deed was executed, and the actual delivery to Murphey was made before the filing of the bill, and, therefore, before the rights of complainants intervened. Burrill on Assignments, § 289; *Brooks* v. *Marbury*, 11 Wheaton, 78; *Mayer* v. *Bernstein*, 69 Miss., 17.

*Orr & Dinsmore*, on the same side.

1. This court has never held an assignment void, except upon one of the following grounds: 1. Because of defects apparent on the face of the instrument. 2. Because of matters *dehors* the instrument, when the facts show a wrongful intent or an unlawful act. *Marks* v. *Bradley*, 69 Miss., 1.

2. The rent notes delivered to Murphey were set apart and indorsed to him before the assignment was made, and it was purely accidental that actual delivery did not occur until a few hours afterwards. Applying the rule announced in *Marks* v.

*Bradley*, we submit this transaction does not invalidate the assignment. The debt of Murphey is not questioned, and this debt was paid by the notes which were not embraced in the schedules made by the assignee. Holberg reserved no present or prospective benefit, and the debt to Murphey was extinguished.

3. The money decreed to Weatherbee & Co. was in Holberg's hands as administrator—that is, he had collected that money, and the decree made it a personal obligation. He was primarily individually liable for the payment of that debt; therefore, it was proper for him to prefer it in the assignment. Here we again refer to *Marks* v. *Bradley.* Preferring an individual debt, separate from his business as a merchant, violated no right of creditors. Holberg was primarily liable for this debt, and the sureties on his bond as administrator were secondarily liable. It was competent and proper for him to prefer the debt to protect them. Burrill on Assignments, § 113, note 2; 18 Ala., 585; 49 Miss., 525; 52 *Ib.*, 556; 69 *Ib.*, 603.

*Rives & Rives* and *T. W. Brame,* for appellees; and *W. B. Stewart* and *Sykes & Bristow,* for appellees and cross-appellant,

Filed separate briefs, discussing at length the questions of law and fact involved, as to the matters referred to in the opinion making the following points:

1. The retention by the assignor of the notes which he subsequently delivered to Murphey, avoided the assignment. These notes he purported to convey in executing the assignment. The rent notes passed by the use of the word "hereditaments." Gilbert on Rents, p. 9; 2 Minor, 38; 3 Kent's Com., 461.

Not only were rent notes delivered to Murphey, but Holberg himself testifies that he placed in the same envelope and delivered to Murphey several other notes that were taken in his mercantile business. These were expressly embraced in the

assignment, which conveyed "all book accounts and demands owing to him and pertaining to said mercantile business." That the retention of these notes avoided the assignment, see *Baum* v. *Pearce*, 67 Miss., 700, where the identical question involved here is decided.

2. The assignor testified that he kept back nothing. In considering the effect of the reservation of the Murphey notes, it is immaterial whether the assignment be considered a general or a special one. The illegality consists in the reservation of effects which the assignment conveys or purports to convey. 1 Am. & Eng. Enc. L., p. 863, note 2; *Ib.*, p. 870.

3. It cannot be said that there was a delivery of the notes to Murphey prior to the execution of the assignment. The purpose to deliver them cannot prevail over what was actually done. The assignor, although he indorsed the notes and placed them in an envelope upon which Murphey's name was written, never lost control of them. This act will avoid the assignment irrespective of the intent of the grantor. *Marks* v. *Bradley*, 69 Miss., 1; *Montgomery* v. *Goodbar*, *Ib.*, 333.

4. The preference to Weatherbee & Co. will avoid the assignment. This debt was due Weatherbee & Co. by the estate of Sanders; Holberg owed it as administrator, and not as an individual. His reports show that he had the money on hand as administrator. He should not be allowed to assert, against the truth of his own sworn reports, that the money was not on hand. It was his duty to pay this debt out of the fund or assets of the estate which he had in his hands as administrator, and it was a fraud on his creditors for him not to do this and to prefer the debt for payment out of his own estate.

5. The badges of fraud are numerous and unmistakable. The grantor, an insolvent merchant, makes an assignment by which he conveys a large estate, naming every conceivable kind of property, for the benefit of all his creditors. But he craftily words the instrument as a partial assignment, thus reserving for himself any other property or estate which he owned.

This, we think, makes the assignment fraudulent. Burrill on Assignments, § 155.

6. Taking into consideration the feature of the instrument just mentioned, the reservation of the Murphey notes and the various transfers and conveyances made by the assignor, prior to and about the time of the execution of the instrument, we submit that it should be held fraudulent in fact.

7. Preferential assignments are regarded with disfavor; they must be shown to be fair and honest in every respect. 1 Am. & Eng. Enc. L., 862; 2 N. Y., 365.

When an assignment is vacated on a charge of fraud, it is void *in toto.* Freeman on Judgments, § 350.

Persons preferred in an assignment are not *bona fide* purchasers. 2 Pom. Eq. Jur., 749. In view of the decision in *Baum* v. *Pearce* and in *Marks* v. *Bradley*, it is impossible to uphold the assignment in this case.

Argued orally by *A. C. Bogle* and *J. A. Orr*, for appellant, and *T. W. Brame* and *W. B. Stewart*, for appellee.

WOODS, J., delivered the opinion of the court.

The very concise and lucid opinion of the learned chancellor leaves no room for doubt as to the grounds upon which the deed of assignment was declared fraudulent and void.

1. The retention by the assignor, and the subsequent delivery to Murphey of certain rent notes given for the use of lands assigned, is one of the two grounds assigned for vacating the deed of assignment. We agree that the rents went with the lands conveyed to the assignee, and that the assignee, for the creditors of the assignor, could not be deprived of the rents by any act of the assignor, without invalidating the assignment. The rents were embraced in the term "hereditaments," and it was not allowable to convey them in the instrument, and, in fact, retain them for other disposition by the assignor, for that would operate hurtfully upon creditors. If we stopped

here, with this statement of a well-known legal principle, the decree, on this ground, should be upheld; but we must go further, and inquire, did the dealing with the rent notes by the assignor, as is disclosed in the record before us, deprive the assignee of the rents, or hinder his collection of them, and, therefore, operate to the injury of the estate conveyed? This inquiry, on the authority of our own decisions, must be answered in the negative. The conveyance of the lands by the deed of assignment carried with it as an incident, and inhering in it, the rents also, and the assignee became thereby entitled to them. The retention of the notes given for rent, and their subsequent delivery to Murphey by the assignor, cannot defeat the assignee's right to them, and hence the action of the assignor in this particular was harmless. *Hatch* v. *Sykes,* 64 Miss., 307; *Watkins* v. *Duvall,* 69 *Ib.,* 364; *Bowdre* v. *Sloan, Ib.,* 369.

2. Was the debt of the Weatherbees fictitious? Was it a debt not due by the assignor, and for which he was personally liable? The assignor was administrator of one Sanders. The estate of his intestate was insolvent, and there had been an agreement by all the creditors to waive the formalities of a regular insolvency proceeding, and to have a decree go for distribution of the fund in the administrator's hands; and there was, accordingly, a proper decree directing distribution ratably among the creditors of Sanders. This decree was final and conclusive, and the administrator became then personally responsible to the Weatherbees, and to all the other creditors, for their distributive shares. If execution had been issued, or proper proceedings had by the Weatherbees to enforce their claim, it would have run against the administrator's estate, and not *de bonis testatoris.* The test of personal liability is the crucial one on this particular point, and by it the debt is shown to be, not fictitious, but real. *Anderson* v. *Tindall,* 26 Miss., 332; *State* v. *Bowen,* 45 Miss., 347.

The cross appeal brings under review the action of the court

below in declining to hold fraudulent the several conveyances assailed by cross appellant, the Adler-Goldman Commission Company. The controversy is largely, if not wholly, one of fact, and the enormous record, containing the voluminous evidence, has received our deliberate and repeated examination. There is much of this evidence which excites suspicion as to some of the conveyances sought to be declared fraudulent; but, on the whole case, we are unable to say the chancellor's finding was erroneous, and that fraud, in any of the instances relied upon by counsel for cross appellant, is so satisfactorily established as to authorize us to reverse the decree on cross appeal.

On the cross appeal, there will be an affirmance of the decree below. The decree in the direct appeal will be reversed, and a decree here dismissing the case.

*Reversed, and decree here.*

Afterwards, *Calhoon & Green*, for appellees, and *Sykes & Bristow*, for appellee and cross appellant, Adler-Goldman Commission Company, each filed a suggestion of error, urging a review of the decision, on the following grounds, substantially:

1. The court should have held that the retention by Holberg of the notes which were delivered to Murphey rendered the assignment fraudulent and void. Holding otherwise is directly at war with the well-considered cases of *Baum* v. *Pearce*, and *Marks* v. *Bradley*, *supra*. The notes were intentionally *retained*, and this fact should avoid the assignment, even if it be conceded that it was not the purpose of Holberg to defraud.

2. In refusing to vacate the assignment because of the reservation and delivery to Murphey of the rent notes, if the court intended to act upon the doctrine announced in *Hutch* v. *Sykes*, 64 Miss., 307, that the right to collect the rents passed by the deed without reference to the disposition of the notes given therefor, we still urge that the evidence shows the reservation and delivery to Murphey of several mercantile notes. It is

true that Murphey does not think he received these mercantile notes, but the positive testimony of Holberg himself shows the contrary.

In *Estes* v. *Gunter*, 122 U. S., 450, the supreme court of the United States held that the fact that an assignor fraudulently turned over part of the assets to his wife would not avoid the assignment, because the assignee could recover them from her, and therefore he was not injured; but this doctrine is directly repudiated in *Baum* v. *Pearce, supra*, and in *Montgomery* v. *Goodbar*, 69 Miss., 333.

3. Accepting the doctrine of *Hatch* v. *Sykes*, 64 Miss., 307; *Watkins* v. *Duvall*, 69 *Ib.*, and *Bowdre* v. *Sloan*, *Ib.*, 369, in its fullest extent, we still say Holberg was guilty of fraud in reserving the rent notes which he subsequently turned over to Murphey. The assignee acquired only the right to sue for use and occupation by the assignment, whereas he was entitled to the rent notes themselves; without them he would have no lien on the agricultural products, and no right to attach for the rent. Code 1880, §§ 1301, 1302; 11 Smed. & M., 153; 43 Miss., 556; *Roberts* v. *Sims*, 64 *Ib.*, 597.

It cannot be held that the rent notes were worthless. They evidenced the rent contract, and with their transfer followed the essentially valuable right to attach for rent. The assignee was entitled to these notes, and to the remedy which their transfer afforded. To hold that their retention was *damnum absque injuria*, and therefore not fraudulent, is necessarily to approve the doctrine of *Estes* v. *Gunter*, which has been utterly repudiated by this court.

4. Granting the individual liability of Holberg for the debt of Weatherbee & Co., we insist that his individual creditors could compel satisfaction primarily out of the assets of the estate of Sanders in his hands. The administrator holds personalty, not as his own, but in trust for the heirs or creditors. 32 Miss., 107. He is absolutely presumed to have on hand the money reported by him, and the fiduciary relation as to

this still exists.   *Anderson* v. *Tindall*, 26 Miss., 332.   When
Holberg made this assignment, he is conclusively presumed to
have had this trust money of Sanders' estate in his hands.   It
has been held that a firm cannot, by assignment, devote firm
assets to pay individual debts of the partners.   *Marks* v. *Brad-
ley*, *supra*.   Much more will an individual not be allowed to
devote his individual assets to pay a debt as to which he has in
his hands a separate and distinct fund.   To so hold would be
to permit a fraud, not only on his creditors, but on the estate
of which he is administrator.

5. We have not controverted any of the findings of fact by
the chancellor which this court has accepted as correct.   We
differ with him as to the conclusions of law only.   The fact
that mercantile notes, as well as rent notes, were reserved, is
not inconsistent with these findings, and this fact is fully sup-
ported by the testimony.

A reargument was granted, and the cause again argued by
*A. C. Bogle*, for appellant, and *M. Green*, for appellees.

WOODS, J., delivered the opinion of the court on the rear-
gument.

On the original argument, little or no notice was taken of
the supposed retention by the assignor of the mercantile paper
which was said by him, in his deposition, to have been deliv-
ered by him to Murphey with the rent notes.   The contro-
versy was had over these rent notes, and our former opinion
did not go beyond those.   On the reargument, the contention
is, that the assignor retained the mercantile paper said by him
to have been delivered to Murphey with the rent notes, and
the evidence relied upon in support of this contention is that
of Murphey, which is to the effect that the assignor delivered
him no notes other than the rent notes.   We have already
adopted Murphey's statement as the true one.   The case, then,
stands thus: The assignor said he delivered, in one envelope,

the rent notes, and certain mercantile paper described by him, to Murphey; Murphey says the assignor is mistaken, in part— that he did not deliver to him any mercantile notes—and Murphey's version we have accepted as correct. The mercantile notes, then, were not in the envelope delivered to Murphey, and whether they were or not was the extent of the inquiry. Mistaken in supposing he delivered these mercantile notes to Murphey, it was not sought to press the search further, and ascertain whether, as a matter of fact, the assignor then had these mercantile notes. They were not in the envelope handed to Murphey. Were they, then, in the assignor's possession? The evidence is silent, and, where the proofs do not show fraud, we cannot affirm its existence.

*We adhere to our former opinion.*